Samuel J. Ritholz and Sylvia Ritholz, his wife v. Commissioner.
Ritholz v. Commissioner
Docket No. 5035.
United States Tax Court
1945 Tax Ct. Memo LEXIS 57; 4 T.C.M. (CCH) 954; T.C.M. (RIA) 45319; October 22, 1945
*57 Warren W. Grimes, Esq., 640 Shoreham Bldg., Washington, D.C., for the petitioners. Harold H. Hart, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $1,542.37 in the income tax of these petitioners for 1940. The petitioners contend, inter alia, that a loss sustained by Samuel from the sale of a piece of improved real estate was sustained in 1940 and not in 1939, as determined by the Commissioner. Findings of Fact The petitioners are husband and wife. They filed a joint income tax return for 1940 on the cash basis with the collector of internal revenue for the first district of Illinois. The petitioner, Samuel, purchased a piece of real estate in Chicago in 1924 for $305,000. It was improved with an apartment building. He borrowed $140,000 in 1929 and gave a deed of trust on the property to secure the loan. Metropolitan Life Insurance Company was the creditor and beneficiary. It started foreclosureproceedings in 1935. The petitioners, in 1931, gave a deed for a onehalf interest in the property to Samuel's young brother Adolph, and Adolph gave back a deed for the same interest at the same *58 time. The first deed was recorded. The second was not. There was no consideration for either deed. The petitioners gave a mortgage on the property for $27,000 to Hyman J. Rosenberg in 1931. There was no consideration for this mortgage. The petitioners and Adolph gave deeds for the property to a dummy corporation in November 1934. The three dummy stockholders of that corporation paid nothing and had no real interest in the property. The above-described steps were all taken at the suggestion of Rosenberg, the petitioners' lawyer, as a part of his "personal tactics" to protect Samuel's equity in the property. The corporation was allowed to be dissolved by the state in 1936 for failure to file its annual report and pay its franchise fee. A title company advised Metropolitan in 1939 that legal title to the property was in the three former stockholders of the dissolved corporation. Metropolitan, on December 19, 1939, entered into an agreement with the three former stockholders whereby the latter agreed that they would convey title to the property to Metropolitan in consideration of its release of the indebtedness due from Samuel and the payment of $2,750. The agreement was to save foreclosure *59 costs. Samuel was the real party in interest and the negotiator on the one side. The former stockholders gave a quitclaim deed for the property dated December 19, 1939, to Metropolitan. It was recorded at once. The title company was to be satisfied as to the title down to the date of the sale and any waivers which should be necessary, after which it was to issue on behalf of the sellers its owner's guaranty policy to Metropolitan. Then the latter was to perform its part of the agreement. These matters were not concluded in 1939. Metropolitan, on January 8, 1940, delivered its deed of release and its check for $2,462.53, representing the $2,750, less adjustments which became necessary. The foreclosure suit was dismissed on January 16, 1940. Samuel received the check for $2,462.53 from the former stockholders who acted throughout for his benefit. Samuel sustained the loss from the sale in 1940. The loss on theland in the agreed amount of $5,422 was a long-term capital loss. The loss on the building in the amount of $68,250.02, as shown by the stipulation, was an ordinary loss. The Commissioner did not allow any deduction on account of the above transaction in determining the deficiency *60 for 1940. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: There is no dispute as to the amount of the loss or as to the division between ordinary loss and long-term capital loss. The Commissioner calls attention to the various misleading transfers made at the suggestion of Rosenberg, and argues that Samuel should not be heard to say that the property and the loss were his. It is not necessary to decide whether there was shystering through dishonest tricks of conveyancing since it is clear that Samuel was the real and equitable owner throughout and alone suffered the loss. The corporation never operated the property or functioned in any way. It was purely a dummy to hold legal title temporarily. If an individual had acted as a similarr dummy, the situation taxwise would have been no different. Samuel, not the dummy, suffered the loss. The Commissioner contends that the loss was sustained in 1939, but the facts support the petitioners' claim that it was not fixed and definite until 1940. There was an agreement to sell executed in 1939 and a quitclaim deed given, but there were still conditions to be met which, if not met, would have *61 prevented the closing of the transaction and the realization of the loss at this time. For example, title had to be examined and approved by the issuance of the guaranty policy before Metropolitan was committed. The completion of these matters occurred in 1940, and we have found upon all of the facts that the loss was sustained in that year. The above makes unnecessary decision of the question of whether there was a net loss carry-over from 1939 resulting from deducting the loss from 1939 income. The petitioners argue that there is a net loss carryover from 1940 to 1941, but, as their counsel must know, such a question would have no effect upon the tax liability for 1940, the only matter over which this Court has jurisdiction in this proceeding, and we can not properly express any opinion on the question. Decision will be entered under Rule 50.